

**SO ORDERED,**

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: January 11, 2022**

The Order of the Court is set forth below. The docket reflects the date entered.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| IN RE: EARL J. BOTSAY | CASE NO. 20-51440-KMS |
| DEBTOR | CHAPTER 7 |
| | |
| A/C SUPPLY INC. | PLAINTIFF |
| V. | ADV. PROC. NO. 21-06001-KMS |
| EARL J. BOTSAY | DEFENDANT |

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Debtor-Defendant Earl J. Botsay's Motion for Summary Judgment, ECF No. 16, with Response in Opposition by Plaintiff A/C Supply Inc., ECF No. 21. The Complaint objects to discharge under 11 U.S.C. § 727(a)(4)(A) and to the discharge of a particular debt under 11 U.S.C. § 523(a)(2)(A) and (a)(4). Botsay incurred the debt eight years ago when he executed a promissory note to A/C Supply individually and on behalf of his heating and air conditioning business. A/C Supply is now a judgment creditor. This proceeding is core under 28 U.S.C. § 157(b)(2)(I) and (J). Botsay is entitled to summary judgment on all counts.

### SUMMARY JUDGMENT STANDARD

"[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

1

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable by Fed. R. Bankr. P. 7056). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the non-moving party." *Ginsberg 1985 Real Estate P'ship v. Cadle Co.*, 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted).

The moving party bears the initial responsibility of apprising the court of the basis for its motion and the parts of the record that indicate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving party presents the . . . court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The non-movant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted). When the non-movant "fails to properly address [the movant's] assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed . . . [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed— show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## UNDISPUTED MATERIAL FACTS

Nearly all the following facts are from the Declaration of Earl J. Botsay ("Declaration"), ECF No. 16-1. These facts generally align with A/C Supply's version of events, ECF No. 22 at 1-5, except as to Botsay's intent and as to the accuracy of his Statement of Financial Affairs ("SOFA"). A/C Supply failed to submit any evidence addressing Botsay's assertions. Consequently, Botsay's version of events is considered undisputed.

### I. The Debt

Botsay owned and operated Assured Comfort Air Conditioning & Heating LLC ("Assured Comfort") from its inception in 1995 until it effectively ceased operations in 2018. Decl. ¶ 1, ECF No. 16-1. Botsay is the 100% owner and sole member of Assured Comfort. *Id.* A/C Supply extended credit to Botsay for goods and supplies purchased for Assured Comfort from at least 1997 through 2018. *Id.* ¶ 2; Appl. for Credit, ECF No. 16-2. Botsay's only relationship with A/C Supply was as a customer to whom A/C Supply extended credit. Decl. ¶ 14. He has never had any interest in A/C Supply or held any position of trust or acted as its officer, director, or agent. *Id.*

Assured Comfort suffered a large uninsured loss in Hurricane Katrina in 2005 and consequently fell behind in paying A/C Supply. *Id.* ¶ 3. In September 2013, A/C Supply requested that the debt be reduced to a note, and Botsay executed the requested note ("Note") individually and on behalf of Assured Comfort in the amount of $161,396.12. *Id.* ¶¶ 4, 5; Promissory Note, ECF No. 16-3. After execution of the Note, A/C Supply continued to extend credit to Assured Comfort until sometime in 2018, and Assured Comfort paid A/C Supply more than $345,000 from September 2013 through February 2019. Decl. ¶¶ 2, 6.

3

In 2016, Botsay suffered a serious heart attack and became unable to accept big jobs because he was physically unable to do the work. *Id.* ¶ 7. Assured Comfort's financial situation deteriorated, and it was unable to make full payments on the Note when due. *Id.* ¶¶ 7, 8.

On October 14, 2019, A/C Supply filed a collection suit against Botsay in the Circuit Court of Hancock County, Mississippi. *Id.* ¶ 9. Botsay's defense was that the amount he owed A/C Supply was less than the amount alleged because A/C Supply should have reduced the balance of the Note by a substantial part of the $345,000 that Botsay paid from 2013 through 2019. *Id.* ¶ 9.

On July 23, 2020, the circuit court entered summary judgment against Botsay in the amount of $192,458.81 plus 8% annual interest ("Judgment"). *Id.* ¶ 10; Final J., ECF No. 21-4. Botsay filed a motion to reconsider, which is still pending, but was financially unable to continue with the litigation and filed the underlying chapter 7 case on September 25, 2020. Decl. ¶ 10.

## II. The Tenancy by the Entirety Deed

On May 29, 2019, before the collection suit, Botsay and his wife executed a warranty deed to themselves that changed how they held title to their home ("Home" or "Property"), from joint tenants with right of survivorship to tenants by the entirety with right of survivorship ("TBE Deed"). ECF Nos. 21-2, 21-1. They executed the TBE Deed because Botsay's wife had changed her name in 2013 and wanted her interest recorded in her correct name. Decl. ¶ 11, ECF No. 16-1 at 2; ECF No. 16-5.

Approximately three months after the Botsays executed the TBE Deed, Botsay's attorney emailed a title report for the Property to A/C Supply's attorney, at the attorney's request. *See* ECF No. 16-6 at 3, 4. The report listed and included a copy of the TBE Deed. *Id.* at 6, 14. Approximately one month after that communication, A/C Supply filed the collection lawsuit, and two weeks later, a second action, in the Chancery Court of Hancock County, Mississippi, seeking to set aside the

4

conveyance as a fraudulent transfer under Mississippi law, *see* ECF Nos. 17 at 13 n.2, 22 at 4. Both lawsuits were stayed when Botsay filed bankruptcy eleven months later.

According to Botsay's bankruptcy schedules, the value of his interest in the Home is $135,000. Sch. A/B at 1, ECF No. 3 at 3. Also according to the schedules, the Property is encumbered by a mortgage with an outstanding balance of $72,081.75. Sch. D at 1, ECF No. 3 at 11. Botsay claims two exemptions in the Property, the homestead exemption of $75,000, Miss. Code Ann. § 85-3-21, and a "wildcard" exemption of $23,959.13, Miss. Code Ann. § 85-3-1(h).[1] Sch. C at 1, ECF No. 3 at 9.

### III. The SOFA

When Botsay prepared the SOFA for his bankruptcy case, he responded to Item No. 18 by checking the "No" box, that within the two years before he filed bankruptcy, he had not sold, traded, "or otherwise transfer[red] any property to anyone" other than in the ordinary course of his business or financial affairs. SOFA, ECF No. 21-5 at 4. He checked "No" because he did not consider a transfer from himself to himself—meaning the execution of the TBE Deed—to be within the scope of the question. Decl. ¶ 12.

For Item No. 4, Botsay checked "No," that during the current year or the two previous calendar years, he had not had "any income from employment or from operating a business." ECF No. 21-5 at 1. This response was accurate. Decl. ¶ 13. For Item No. 5, he checked "Yes," that during the current year or the two previous calendar years, he had received other income; and he listed "Social Security Benefits," including dollar amounts, for 2020, 2019, and 2018. ECF No. 21-5 at 2. These responses were accurate. Decl. ¶ 13.

---

[1] The wildcard exemption gives Mississippi residents who are at least 70 years old an additional $50,000 exemption applicable to any kind of property. Mississippi's state-law exemptions apply in bankruptcy because Mississippi opted out of the federal exemption scheme. *See* 11 U.S.C. § 522(b)(2) (providing for exemptions listed in the Bankruptcy Code unless not authorized by applicable state law).

## CONCLUSIONS OF LAW

### I. Section 523(a)(2)(A) and (a)(4)

The Bankruptcy Code excepts certain debts from discharge, including those satisfying the elements of § 523(a)(2)(A) or (a)(4):

> (a) . . . any debt—
>
> . . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> > (A) false pretenses, a false representation, or actual fraud . . . [or]
>
> . . . .
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . .

11 U.S.C. § 523(a)(2)(A), (a)(4). A/C Supply has failed to present or point to any evidence showing a genuine issue for trial as to either of these exceptions.

### A. Section 523(a)(2)(A)

The Fifth Circuit has applied different but overlapping elements of proof for each of the three grounds for an exception to discharge under § 523(a)(2)(A). *AT&T Universal Card Servs. v. Mercer (In re Mercer)*, 246 F.3d 391, 403 (5th Cir. 2001). A false pretense or false representation is a knowing and fraudulent falsehood describing past or current facts on which the creditor relied. *Id.* A false representation may be an express statement or it may be silence about a material fact. *Selenberg v. Bates (In re Selenberg)*, 856 F.3d 393, 399 (5th Cir. 2017). Similarly, a false pretense may be based on misleading conduct alone. *Demory v. Martin (In re Martin)*, 630 B.R. 766, 783 (Bankr. S.D. Miss. 2021). Actual fraud may involve a false representation but also encompasses frauds that can be accomplished without a false representation, such as fraudulent conveyance schemes. *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 356, 361 (2016).

The Complaint does not specify which of the three grounds applies and it pleads no facts that would satisfy the element common to all of them, that the "money, property, services, or . . . credit" be "obtained by" the debtor's dishonest acts, 11 U.S.C. § 523(a)(2). Instead, the Complaint alleges generally that the "intentional and fraudulent effort to escape Plaintiff's claim" was the conveyance accomplished by the TBE Deed, Compl. ¶ 23. But the TBE Deed was executed nearly six years *after* the Note, meaning the TBE Deed could not have been a false misrepresentation, false pretense, or fraud by which Botsay obtained the credit.

The Complaint implies that the TBE Deed was a fraudulent transfer. But in Mississippi, a transfer of exempt property is not fraudulent regardless of intent, as a matter of law. *Henderson v. Howse (In re Howse)*, No. 19-06034-KMS, 2021 WL 2932675, at *3 (Bankr. S.D. Miss. July 12, 2021) (citing *Joe T. Dehmer Distribs., Inc. v. Temple*, 826 F.2d 1463, 1467 (5th Cir. 1987); *Howell v. Gen. Cont. Corp.*, 91 So. 2d 831, 836 (Miss. 1957); *Orgill Bros. v. Gee*, 120 So. 737, 738 (Miss. 1928)). Here, if Botsay's interest was exempt under the state-law homestead and wildcard exemptions before it was transferred into the new tenancy by the entirety, then the transfer could not have been fraudulent.

Now, in response to Botsay's summary judgment motion, A/C Supply presents a new argument: that it extended credit to Botsay for at least two years from the time he suffered his heart attack in 2016, a period when "he knew he would be unable to satisfy his financial obligation to A/C Supply." ECF No. 22 at 8. According to this argument, by continuing to use the line of credit and to pay on it through February 2019, Botsay represented to A/C Supply that he would be able to satisfy the line of credit, an assurance on which A/C Supply relied. *Id.* at 9.

This argument is fatally flawed. "'[D]ebt for' is used throughout [§ 523(a)] to mean 'debt as a result of,' 'debt with respect to,' 'debt by reason of,' and the like . . . ." *Cohen v. de la Cruz*,

7

523 U.S. 213, 220 (1998). Here, the debt at issue is not the "debt for" the line of credit that A/C Supply extended that was in addition to the amount reduced to the Note; the debt at issue is the "debt for" the Note, which was reduced to the Judgment. *See* Compl. Prayer for Relief, ECF No. 1 at 7 ("That the Court determine the *debt reflected in the Judgment* entered in favor of Plaintiff against Debtor on July 23, 2020 is non-dischargeable . . . .") (emphasis added); ECF 21-4 (Final Judgment finding Botsay liable for unpaid balance of note).

A/C Supply having failed to meet its non-movant's burden, Botsay is entitled to summary judgment on the § 523(a)(2)(A) count.

### B. Section 523(a)(4)

The § 523(a)(4) exception to discharge "was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998) (quoting *Boyle v. Abilene Lumber, Inc.* (*In re Boyle*), 819 F.2d 583, 588 (5th Cir. 1987)). As to the abuses of fiduciary positions, the concept of "fiduciary" under § 523(a)(4) is limited to "express or technical trusts," and the attendant duties must have been imposed before the fraud or defalcation that created the debt. *Tex. Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339, 342 (5th Cir. 1998) (citing *Chapman v. Forsyth*, 43 U.S. (2 How.) 202 (1844); *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934)). As to the criminal acts, embezzlement is "[the] fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *In re Miller*, 156 F.3d at 602 (quoting *Greyhound Lines Inc. v. Thurston (In re Thurston)*, 18 B.R. 545, 550 (Bankr. M.D. Ga. 1982)). And larceny is "(1) the fraudulent and wrongful taking away of the property of another with

8

(2) the intent to convert it to the taker's use and with the intent to permanently deprive that owner of such property." *Cowin v. Countrywide Home Loans, Inc. (In re Cowin)*, 864 F.3d 344, 350 (5th Cir. 2017) (internal quotation marks omitted).

Again not specifying which ground applies, the Complaint asserts that the debt should be excepted from discharge based on the Judgment and the conveyance accomplished by the TBE Deed. Compl. ¶ 27, ECF No. 1 at 6. On Botsay's summary judgment motion, A/C Supply argues only that the debt should be excepted from discharge "[f]or the same reasons elucidated above," ECF No. 22 at 9, presumably referring to its argument under § 523(a)(2)(A). A/C Supply does not address Botsay's statement that he has never had any interest in A/C Supply or held any position of trust or acted as its officer, director, or agent. Because this fact is therefore considered undisputed, A/C Supply cannot prove "fraud or defalcation while acting in a fiduciary capacity," 11 U.S.C. § 523(a)(4). And A/C Supply neither presented nor pointed to any fact in the record showing that Botsay committed larceny or embezzlement.

A/C Supply having failed to meet its non-movant's burden, Botsay is entitled to summary judgment on the § 523(a)(4) count.

## II. Section 727(a)(4)(A)

A debtor must be granted a discharge unless a statutory exception applies. *See* 11 U.S.C. § 727(a). "The exceptions are construed strictly against the creditor and liberally in favor of the debtor." *Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009) (citing *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997)).

A debtor will be denied a discharge for "knowingly and fraudulently, in or in connection with the case . . . mak[ing] a false oath or account." 11 U.S.C. § 727(a)(4)(A). To prevail under § 727(a)(4)(A), the plaintiff must prove that the debtor, with fraudulent intent, made a knowingly

9

false statement under oath that "related materially to the bankruptcy case." *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992). "Circumstantial evidence may be used to prove fraudulent intent . . . ." *In re Duncan*, 562 F.3d at 695. "A plaintiff asserting a § 727(a)(4)(A) discharge exception bears the burden of demonstrating an actual intent to hinder, delay or defraud creditors." *Mandel v. White Nile Software, Inc. (In re Mandel)*, No. 20-40026, 2021 WL 3642331, at *6 (5th Cir. Aug. 17, 2021) (citing *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90-91 (5th Cir. 1989)). A false statement or omission in the schedules may be a "false oath" under § 727(a)(4)(A). *In re Beaubouef*, 966 F.2d at 178. Omissions by honest mistake are not grounds for denial of discharge. *Id*.

The Complaint alleges that Botsay knowingly and fraudulently represented in his SOFA that he had made no money from employment or the operation of his business since 2018. Compl. ¶ 30, ECF No. 1 at 7. It also alleges that Botsay knowingly and fraudulently represented that he had not transferred any property within the two years before he filed bankruptcy. *Id.* ¶ 31. As to either of these allegations, A/C Supply has failed to present or point to any evidence showing a genuine issue for trial.

### A. SOFA – Business Income

A/C Supply argues that Botsay's tax returns show wages in 2018 and that Botsay "admits to not ceasing operations at Assured Comfort until the 2018 tax year." ECF No. 22 at 10. By "admits," A/C Supply presumably refers to Botsay's statement that Assured Comfort "effectively ceased operations in 2018." *See* Decl. ¶ 1.

But the fact Botsay's company was still operational for some part of 2018 is not in and of itself significantly probative of Botsay's 2018 income. A/C Supply did not submit Botsay's tax returns. Nor did it submit any deposition excerpts or answers to interrogatories in which Botsay

admitted receiving any income from Assured Comfort in 2018. Consequently, A/C Supply has not established a genuine issue as to whether Botsay disclosed all his sources of income on the SOFA.

## B. SOFA – Property Transfer

"[T]he definition of 'transfer' under the Bankruptcy Code is comprehensive and includes every conceivable mode of alienating property, whether directly or indirectly, voluntarily or involuntarily." *Cullen Ctr. Bank & Tr. v. Hensley (In re Criswell)*, 102 F.3d 1411, 1415 (5th Cir. 1997) (citing 11 U.S.C. § 101(54)). Other courts have held that the definition includes joint tenants' conveyance to themselves as tenants by the entirety. *See Olsen v. Paulsen (In re Paulsen)*, 623 B.R. 747, 754 (Bankr. N.D. Ill. 2020); *In re Mickens*, 575 B.R. 797, 801-02 (Bankr. W.D. Mich. 2017), *aff'd sub nom. Hagen v. Mickens*, 589 B.R. 594 (W.D. Mich. 2018); *Meininger v. Miller (In re Miller)*, 188 B.R. 302, 305 (Bankr. M.D. Fla. 1995).

When Botsay and his wife executed the TBE Deed, a new estate was created, the tenancy by the entirety. *See* Miss. Code Ann. § 89-1-7 (estate in entirety may be created by conveyance from owners to themselves). A tenancy by the entirety "is not a joint tenancy but is a sole tenancy" and "may exist only in a husband and wife." *Ayers v. Petro*, 417 So. 2d 912, 914 (Miss. 1982). "[E]ach spouse is seised of the whole or entirety and not a divisible part. Thus, the legal fiction is that there is but one estate held by only one 'person'—the marriage itself." *Newton v. Long (In re Estate of Childress)*, 588 So. 2d 192, 194-95 (Miss. 1991) (citation omitted). The conveyance therefore changed both Botsay's and his wife's rights and interests in the Property. *See In re Mickens*, 575 B.R. at 801-02 (citing *United States v. Craft*, 535 U.S. 274, 282 (2002)) ("[T]o the extent property can be described as a 'bundle of sticks' comprised of various individual rights, the joint tenancy bundle held by each [spouse] prior to the transfer was different than the tenancy by

11

the entirety bundle that existed after the transfer."). Consequently, Botsay should have disclosed the conveyance on the SOFA.

Accordingly, two elements under § 727(a)(4)(A) are satisfied: Botsay made a statement under oath, representing on the SOFA that he had not transferred any property within the two years preceding the filing of the case; and that statement was false.

The next two elements are related: whether Botsay knew the correct answer to the question about transfers was "Yes" and whether answering "No" demonstrated an actual intent to hinder, delay or defraud creditors. A/C Supply argues that the Botsays waited nearly six years after the name change, "until the eve of inevitable litigation," to execute the TBE Deed and that they could have achieved the same result by filing a "same name affidavit." ECF No. 22 at 10-11. A/C Supply also argues that additional "badges of fraud" apply: lack of consideration for the transfer, the spousal relationship, and Botsay's continued possession of the property. ECF No. 22 at 12.

But this argument ignores the fact that when Botsay filled out the SOFA, he knew that A/C Supply already knew about the TBE Deed. Botsay's attorney had given A/C Supply's attorney the title report a year before the bankruptcy case was filed, and A/C Supply had filed its fraudulent transfer action based on the TBE Deed shortly after receiving the report. Because A/C Supply has failed to address Botsay's evidence on this fact, it is considered undisputed that when Botsay filled out the SOFA, he knew that A/C Supply knew about the TBE Deed. It follows that when Botsay checked "No," it was an honest mistake—he did not know the correct answer was "yes"—and not a knowingly false response intended to hinder, delay, or defraud creditors.

As to the final element, materiality, "[it] is not solely based on the value of the item omitted or whether [the omission] was detrimental to creditors." *Duncan*, 562 F.3d at 695 (citing *Beaubouef*, 966 F.2d at 178). "The subject matter of a false oath is 'material,' and thus sufficient

to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Beaubouef*, 966 F.2d at 178 (quoting *Chalik v. Moorefield* (*In re Chalik*), 748 F.2d 616, 617 (11th Cir. 1984)). A/C Supply does not address the materiality element.

The transfer was not material; the Home would be exempt in the underlying case whether held in a tenancy by the entirety or in a joint tenancy. Under Mississippi law, property owned by the entirety is exempt from claims held by creditors of only one spouse. *In re Pace*, 521 B.R. 124, 133 (Bankr. N.D. Miss. 2014) (citing *In re Dixon*, No. 10-51214-KMS, 2011 Bankr. LEXIS 5680, at *19-20 (Bankr. S.D. Miss. Mar. 31, 2011)). It follows that a Mississippi debtor's interest in property held by the entirety is also exempt under the Bankruptcy Code. *See* 11 U.S.C. § 522(b)(1), (b)(3)(B) (providing that debtor may exempt interest as tenant by entirety "to the extent that such interest . . . is exempt from process under applicable nonbankruptcy law"); *see also In re Dixon*, 2011 Bankr. Lexis 5680, at *13 ("As used in 522(b)(3)(B), 'exempt from process,' means that under state law the property at issue is immune from the collection efforts of creditors."). Consequently, A/C Supply, with its claim against only Botsay, cannot reach the Home as it is currently held, in a tenancy by the entirety. But A/C Supply could not have reached the Home in a joint tenancy either, because of the homestead and wildcard exemptions:

| | |
|---|---|
| Value of Home (as scheduled) | $270,000 |
| Mortgage balance (as scheduled) | -  72,081 |
| Total equity | $197,919 |
| Debtor's equity | $98,959 |
| Homestead exemption[2] | -  75,000 |

---

[2] Under long-settled Mississippi law, when a debtor and non-debtor spouse each hold a one-half interest in homestead property, the debtor may claim the full amount of the homestead exemption. *Dehmer*, 826 F.2d at 1468 (citing *Chapman v. White Sewing Mach. Co.*, 28 So. 735 (Miss. 1900)).

13

  Wildcard exemption       <u>-  23,959</u>
                      0

A/C Supply having failed to meet its non-movant's burden, Botsay is entitled to summary judgment on the § 727(a)(4) count.

## ORDER

Botsay having shown there is no dispute as to any material fact, and A/C Supply having failed to show there is a genuine issue for trial,

**IT IS THEREFORE ORDERED** that summary judgment is **GRANTED** in favor of Earl J. Botsay.

##END##